O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MENDOZA GONZALES, | NO. EDCV 11-1028-JAK (MAN) |
| Plaintiff, | MEMORANDUM AND ORDER DISMISSING |
| v. | COMPLAINT WITH LEAVE TO AMEND |
| SAN BERNARDINO COUNTY SHERIFF'S DEPT., et al, | |
| Defendants. | |

On July 11, 2011, plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

Congress has mandated that courts perform an initial screening of civil rights actions brought by prisoners with respect to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The Court "shall" dismiss such an action if the Court concludes that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or

seeks relief against a defendant who is immune from suit.  28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1).  In screening such a complaint, the Court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt.  *See* Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  *Id.*; Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff is currently detained at the West Valley Detention Center ("WVDC") in San Bernardino County.  (Complaint at 2.)  He sues the following defendants:  San Bernardino County Sheriff's Department ("Sheriff's Department"); San Bernardino County Sheriff Rod Hoops, solely in his official capacity; Deputy Sheriff Carrillo, in his individual and official capacities; and Deputy Sheriffs John Doe Nos. 1 through 3, solely in their official capacities.  (*Id.* at 3-4.)

Plaintiff asserts an Eighth Amendment claim for violation of his right to personal safety and pendent state claims for negligence and "mental anguish."  (Complaint at 5.)  He alleges that Sheriff Hoops mandates that deputy sheriffs follow a policy and practice pursuant to which inmates requesting protective custody are first sent to the "high power unit" in order "to get hurt first, to substantiate their claim, before putting them in protective custody."  (*Id.*)  Plaintiff alleges that defendant Carrillo, a "classification deputy," applied this policy

2

to plaintiff and refused his requests to be placed in protective custody. (*Id.* at 5 & Ex. G.)

Plaintiff further contends that, while he was housed in the "high power" unit, his ethnicity was improperly changed several times on his WVDC records. (Complaint at 5.) He contends that, as a Hispanic inmate, he should only be housed with Hispanic inmates, and defendant Carrillo acted maliciously and sadistically by assigning him an African-American cellmate. (*Id.* at 5a.) Plaintiff's African-American cellmate assaulted him, causing plaintiff to defend himself, and plaintiff's thumb was broken and required surgery. (*Id.*) When plaintiff returned from the hospital, defendant Carrillo changed his ethnicity from African-American back to Hispanic and assigned him a Hispanic cellmate.[1] (*Id.*) Plaintiff was afraid for his safety and denied the Hispanic inmate entry to his cell. (*Id.*) According to the grievances attached as exhibits to plaintiff's Complaint, he is a Mexican Mafia associate "drop out" and is afraid of retaliation from Hispanic gang members. (*Id.*, Exs. D, E.)

Plaintiff was eventually placed in protective custody, where he remains. (Complaint at 5a.) He seeks an injunction preventing defendants from returning him to the general population and preventing "excessive cell searches" in retaliation for this lawsuit. (*Id.* at 6.)

---

[1] Plaintiff's allegation that his ethnicity was changed "back to Hispanic" implies that at some point it was changed from Hispanic to African-American. It is not clear from the Complaint, however, whether plaintiff has a factual basis for asserting that his ethnicity was changed on the WVDC records, or whether he is merely drawing an inference from his cellmate assignments.

3

He also seeks damages. (*Id.*)

**DISCUSSION**

**I.  PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT CARRILLO.**

Plaintiff asserts claims against defendant Carrillo, in his individual and official capacities, for violation of plaintiff's Eighth Amendment right to personal safety. (Complaint at 5.) As an initial matter, the Cruel and Unusual Punishment Clause of the Eighth Amendment applies only to convicted prisoners. <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n.40, 97 S. Ct. 1401, 1412 n.40 (1977). The Due Process Clause of the Fourteenth Amendment governs conditions of confinement claims brought by pre-trial detainees. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979); <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1440-41 (9th Cir. 1991). Thus, if plaintiff is held at WVDC as a pretrial detainee, his claims arise under the Due Process Clause. Plaintiff should specify his status in his amended complaint.

Prison officials have a duty to take reasonable steps to guarantee inmates' safety and protect them from assault by other inmates. *See* <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 1976 (1994). Although a pretrial detainee's interest in personal security arises under the Fourteenth Amendment, the deliberate indifference standard of the Eighth Amendment provides the level of culpability necessary for liability. <u>Redman</u>, 942 F.2d at 1443. Plaintiff must show that defendant acted with deliberate indifference to a substantial risk of

serious harm. Farmer, 511 U.S. at 828, 114 S. Ct. at 1974. Deliberate indifference exists when the official knows of and disregards an excessive risk to the inmate's safety. *Id.* at 837, 114 S. Ct. at 1979. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must actually draw the inference. *Id.* While a prisoner need not wait to be injured before seeking injunctive relief, *see* Farmer, 511 U.S. at 845, 114 S. Ct. at 1983, a prisoner seeking damages must allege that the risk materialized and caused him injury, *see* Babcock v. White, 102 F.3d 267, 270-73 (7th Cir. 1996)(explaining that "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim"). *See also* Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)("In a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him some injury.").

Here, plaintiff's claims arise out of defendant Carrillo's refusal to place him in protective custody. Plaintiff does not allege in the Complaint why he required protective custody, but according to his attached exhibits, he feared attack by Hispanic gang members because he used to be a Mexican Mafia associate and "dropped out." (Complaint, Exs. D-H.) Plaintiff complains that Deputy Sheriff Carrillo assigned him an Hispanic cellmate. Plaintiff, however, does not allege that he was injured by an Hispanic cellmate; in fact, plaintiff refused to allow that Hispanic prisoner into the cell. (Complaint at 5a.) Thus, even assuming, *arguendo*, that defendant Carrillo acted with deliberate indifference when he assigned plaintiff an Hispanic cellmate, plaintiff cannot recover damages, because he did not suffer any injury from that event.

Plaintiff alleges that he was injured by his African-American cellmate. However, there are no allegations that there was any connection between this assault and plaintiff's need for protective custody. (Complaint at 5a.) Indeed, plaintiff does not even allege why his cellmate assaulted him. (*Id.*) Plaintiff contends that it is the "custom and habit" for Hispanic inmates to be housed only with other Hispanic inmates; however, the Supreme Court has held that a policy of housing prisoners "only with other inmates of the same race" is subject to strict scrutiny. *See* Johnson v. California, 543 U.S. 499, 507-10, 125 S. Ct. 1141, 1147-49 (2005). Thus, plaintiff has not alleged facts showing that defendant Carrillo was culpable merely because he assigned plaintiff an African-American cellmate. There are no facts alleged showing or tending to show that defendant Carrillo knew of and disregarded an excessive risk to plaintiff's safety. Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

Finally, plaintiff alleges that he *is* currently housed in protective custody. (Complaint at 5a.) Although he seeks an injunctive order preventing defendants from returning him to the general population (Complaint at 6), the Complaint contains no allegations showing that defendants are likely to do so. Thus, plaintiff's allegations regarding his need for injunctive relief are purely speculative.

Accordingly, for all of these reasons, plaintiff has not alleged a claim against defendant Carrillo for violation of plaintiff's

constitutional right to personal safety.[2]

## II. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE SHERIFF'S DEPARTMENT OR DEFENDANTS IN THEIR OFFICIAL CAPACITIES**.

Plaintiff has named the Sheriff's Department as a defendant. (Complaint at 1.) To allege a Section 1983 claim against an individual defendant, a plaintiff need only allege a constitutional deprivation inflicted on him by that defendant. To allege a Section 1983 claim against a local governmental entity such as the Sheriff's Department, however, more is needed. Plaintiff must allege a constitutional deprivation *and* a policy, custom, or practice of Sheriff's Department that was the "moving force" of the constitutional deprivation. Monell v. Department of Social Services, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008); Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007).

A local governmental entity such as the Sheriff's Department "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell,

---

[2] Plaintiff also alleges that defendant Carrillo x-rayed him and that Carrillo is not qualified to operate an x-ray machine. (Complaint at 4.) Plaintiff does not assert a constitutional claim based on this allegation, nor would it support a constitutional claim.

7

436 U.S. at 694, 98 S. Ct. at 2037-38. Thus, a local governmental entity is not liable for the acts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or unless the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91, 98 S. Ct. at 2035-36.

Here, plaintiff alleges that the Sheriff's Department has a policy or practice of waiting until an inmate is injured before acceding to his request to be placed in protective custody, so as to substantiate the need for protective custody. (Complaint at 5.) However, the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 386, 109 S. Ct. 1197, 1203 (1989). Plaintiff contends that he required protective custody, because he was in danger from Hispanic gang members. Plaintiff was not injured by a Hispanic gang member. Although plaintiff *was* injured by his African-American cellmate, he does not allege a connection between that assault and his need for protective custody. Thus, plaintiff has not alleged a causal connection between the purported policy and his injuries. *See* Villegas, 541 F.3d at 957.

Plaintiff asserts official capacity claims against Sheriff Hoops, John Doe Nos. 1 through 3, and Deputy Sheriff Carrillo. Because an

official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent, *see* Monell 436 U.S. at 690 n.55, 98 S. Ct. at 2035 n.55, plaintiff's official capacity claims are, in effect, claims against the Sheriff's Department. The Court has already explained why plaintiff's claims against the Sheriff's Department are defective.

Accordingly, plaintiff's claims against the Sheriff's Department and his official capacity claims against defendants Hoops, Carrillo, and John Doe Nos. 1 through 3 must be dismissed.

**III. SHERIFF HOOPS AND JOHN DOE NOS. ONE THROUGH THREE ARE REDUNDANT DEFENDANTS.**

Plaintiff has sued Sheriff Hoops and John Does Nos. 1 through 3 solely in their official capacities. (Complaint at 1, 3.) As explained above, a suit against a defendant in his official capacity is equivalent to a suit against the entity that employs him or her. Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept., 533 F.3d 780, 798 (9th Cir. 2008). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Id.* Sheriff Hoops and John Doe Nos. 1 through 3 are redundant defendants, and plaintiff's claims against them must be dismissed for this additional reason.

///
///
///

**IV. PLAINTIFF'S STATE LAW CLAIMS ARE SUBJECT TO DISMISSAL FOR FAILURE TO COMPLY WITH THE CALIFORNIA GOVERNMENT CLAIMS ACT.**

Plaintiff asserts pendent state claims for negligence and "mental anguish." (Complaint at 5.)

Under the California Government Claims Act (also known as the Tort Claims Act), a plaintiff seeking to recover money damages from a public entity or its employees must submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. California Government Code §§ 900.4, 905, 910, 911.2, 915. Timely claim presentation is not merely a procedural requirement but is an element of the plaintiff's cause of action. Shirk v. Vista Unified School District, 42 Cal. 4th 201, 209, 64 Cal. Rptr. 3d 210, 216 (2007). A plaintiff may sue the public entity and its employees in court only after the entity has acted upon or is deemed to have rejected the claim. *Id.; see* Mangold v. California Public Utilities Commission, 67 F.3d 1470, 1477 (9th Cir. 1995)("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.").

Thus, when a plaintiff asserts a claim subject to the Government Claims Act, he must affirmatively allege compliance with the claim presentation procedure, or circumstances excusing such compliance, in his complaint. Shirk, 42 Cal. 4th at 209, 64 Cal. Rptr. 3d at 216; State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1243, 13 Cal. Rptr. 3d 534, 541 (2004)(plaintiff must allege facts

"demonstrating or excusing compliance with the claim presentation requirement"). "Compliance with the claims statutes is mandatory and failure to file a claim is fatal to the cause of action." City of San Jose v. Superior Court, 12 Cal. 3d 447, 454, 115 Cal. Rptr. 797, 802 (1974)(*internal citation omitted*). The requirement that a plaintiff asserting claims subject to the Government Claims Act must affirmatively allege compliance with the claims filing requirements applies in federal court. Karim-Panahi, 839 F.2d at 627.

Plaintiff has not alleged that he submitted a timely claim to the County of San Bernardino. Plaintiff, in fact, requested from this Court permission to present a late claim.[3] Plaintiff's failure to comply with the claims filing procedures of the California Government Claims Act mandates dismissal of his state law claims.

**CONCLUSION**

For the foregoing reasons, the Complaint is dismissed with leave to amend. If plaintiff wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a First Amended Complaint that attempts to cure the defects in the Complaint described herein. The First Amended Complaint, if any, shall be complete in itself. It shall not refer in any manner to the original Complaint.

---

[3] On July 15, 2011, the Court denied plaintiff's request. See Ovando v. City of Los Angeles, 92 F. Supp. 2d 1011, 1022 (C.D. Cal. 2000)(question presented by application for leave to file untimely claim under the California Government Claims Act is not within federal court's subject matter jurisdiction).

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described herein, may result in a recommendation that this action be dismissed pursuant to Fed. R. Civ. P. 41(b).**

DATED: July 26, 2011

*Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE